[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15424

_____

D.C. Docket No. 1:11-md-02218-JOF

ERICA Y. BRYANT,
LEANDRO PEREZ,
INGRID PEREZ JACIR,
JOHN EDWARDS,
as Father and next friend of his
daughter, decedent Jennifer Edwards,
CONNIE EDWARDS,
as Mother and next friend of her
daughter, decedent Jennifer Edwards, et al.,

Plaintiffs – Appellees,
Cross Appellants,

JAMES NATHANIEL DOUSE,

Plaintiff – Appellee,

versus

UNITED STATES OF AMERICA,

Defendant – Appellant,
Cross Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(October 14, 2014)

Before TJOFLAT and WILSON, Circuit Judges, and BUCKLEW,[*] District Judge.

TJOFLAT, Circuit Judge:

This appeal arises out of a multi-district litigation, in which multiple plaintiffs and their family members allege that they experienced various health problems after being exposed to toxic substances in the drinking water while living at Camp Lejeune, a military base in North Carolina. The plaintiffs brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. The United States moved to dismiss the case, arguing that the North Carolina statute of repose, which provided that "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action," N.C. Gen. Stat. § 1-52(16) (2010), precluded the plaintiffs from bringing this case.[1]

The District Court disagreed, concluding that a provision of the Comprehensive Environmental Response, Compensation, and Liability Act

---

[*] Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida, sitting by designation.

[1] The Government also sought to dismiss the plaintiffs' complaints on the grounds that their claims are barred by the Feres doctrine and that any post-discharge failure-to-warn claims are barred by the discretionary-function exception to the Federal Tort Claims Act. The District Court only addressed and certified the statute-of-repose issue to this court. Consequently, we do not discuss, and we express no opinion on, the Government's other asserted defenses.

(CERCLA), 42 U.S.C. § 9568,[2] preempted North Carolina's statute of repose. The court separately ruled that North Carolina's statute of repose does not contain an exception for latent diseases.

The District Court then certified two questions for interlocutory appeal,[3] and this court permitted the appeal. The two questions presented are (I) whether CERCLA preempts the North Carolina statute of repose, and (II) whether the North Carolina statute of repose contains an exception for latent diseases. We address each question in turn.

---

[2] The relevant provision of CERCLA, 42 U.S.C. § 9568(a)(1), provides:

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

"The term 'applicable limitations period' means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought." Id. § 9568(b)(2). "The term 'commencement date' means the date specified in a statute of limitations as the beginning of the applicable limitations period." Id. § 9568(b)(3). "[T]he term 'federally required commencement date' means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." Id. § 9658(b)(4)(A).

[3] 28 U.S.C. § 1292(b) provides that in a civil action, a district court may certify a question of law to a court of appeals if the district court concludes that an order not otherwise appealable "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

I.

After the parties briefed this case, but before oral argument, the Supreme

Court granted a petition for a writ of certiorari in a separate case out of the Fourth

Circuit, which presented the question of whether CERCLA preempts North

Carolina's statute of repose.[4]  On June 9, 2014, the Court determined that

CERCLA, specifically 42 U.S.C. § 9658, does not preempt North Carolina's

statute of repose.  See generally CTS Corp. v. Waldburger, ___ U.S. ___, 134 S.

Ct. 2175, 189 L. Ed. 2d 62 (2014).  Thus, we have the answer to the first question

presented in this interlocutory appeal.  CERCLA does not preempt North

Carolina's statute of repose.

II.

We must, therefore, turn to the second question presented in this appeal,

whether the North Carolina statute of repose includes an exception for latent

diseases.  At the time the plaintiffs brought this action, the statute of repose

provided:

> Unless otherwise provided by statute, for personal injury or physical
> damage to claimant's property, the cause of action . . . shall not accrue

---

[4] The Fourth Circuit decided that CERLCA preempted the statute of repose.  See
Waldburger v. CTS Corp., 723 F.3d 434, 444–45 (4th Cir. 2013), rev'd, ___ U.S. ___, 134 S. Ct.
2175, 189 L. Ed. 2d 62 (2014).  Because the plaintiffs in the case brought a nuisance action, the
court did not address the issue of whether the North Carolina statute of repose contained an
exception for latent diseases.

4

until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs.  Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

N.C. Gen. Stat. § 1-52(16) (2010).  On its face, the text of the statute contains no exception for latent diseases, and no other North Carolina statute excepts latent diseases from the statute of repose.  The plain text of the statute is unambiguous.[5]

---

[5] The plaintiffs rely on Jones v. United States, 751 F. Supp. 2d 835 (E.D.N.C. 2010), to support their contention that the statute of repose was ambiguous as to whether it contained a latent-disease exception.  Although the District Court in that case held that the statute of repose did not apply to latent diseases, it reached that conclusion by bypassing the statutory text entirely.  See id. at 836 ("The Court finds that § 1-52(16)'s statute of repose has an exception for latent diseases.  The Court bases this decision on the statute's legislative history, case law, and state public policy.").  In an order denying the defendant's motion for reconsideration, the court confirmed that the statute's text did not provide an exception for latent diseases; it ignored the text, however, because, according to the court, "[a]dopting § 1-52(16)'s literal meaning would lead to absurd results."  Jones v. United States, No. 7:09-CV-106, 2011 WL 386955, at *2 (E.D.N.C. Feb. 3, 2011).

The absurd result, according to the court, was that potential claimants would be denied an opportunity to seek relief before they became aware that they were ill.  But that is the point of a statute of repose; it "bar[s] any suit that is brought after a specified time since the defendant acted . . . , even if the period ends before the plaintiff has suffered a resulting injury."  Black's Law Dictionary 1546 (9th ed. 2009).  "Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  CTS Corp. v. Waldburger, ___ U.S. ___, ___, 134 S. Ct. 2175, 2183, 189 L. Ed. 2d 62 (2014) (quotation marks omitted).

"When the words of a statute are unambiguous . . . judicial inquiry is complete."  Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997) (internal quotation marks omitted); see also Carolina Power & Light Co. v. City of Asheville, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) ("Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." (internal quotation marks omitted)).  Here, the statutory language is plain.  We therefore decline to follow Jones in conjuring an exception where the plain text of the statute of repose provides none.

5

Shortly after the Supreme Court decided Waldburger, however, the Governor of North Carolina approved Session Law 2014-17, which amended the statute of repose. The General Assembly also passed, and the Governor signed, Session Law 2014-44, which made several technical amendments to Session Law 2014-17.[6] We then requested supplemental briefing from the parties on the following question: Whether, in light of the enactment of N.C. Session Laws 2014-17 and 2014-44, the plaintiffs' actions are barred by North Carolina's statute of repose (N.C. Gen. Stat. § 1-52(16))?[7]

The statute of repose now reads:

Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action . . . shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Except as provided in G.S. 130A-26.3, no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

---

[6] Session Law 2014-44 is titled "An Act to Make Technical Amendments to Session Law 2014-17." However, one of the amendments, which removed a sunset provision that set Session Law 2014-17 to expire on June 19, 2023, seems more substantive than technical. For ease of discussion, we refer to Session Law 2014-44 except where specifically noted.

[7] Even if we were so inclined, we are unable to certify this question to the North Carolina Supreme Court because "North Carolina currently has no mechanism for us to certify questions of state law to its Supreme Court." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

6

N.C. Gen. Stat. Ann. § 1-52(16) (West 2014) (emphasis added).  The session law

added a new section to the North Carolina General Statutes, § 130A-26.3, which

provides: "The 10-year period set forth in G.S. 1-52(16) shall not be construed to

bar an action for personal injury, or property damages caused or contributed to by

. . . the consumption, exposure, or use of water supplied from groundwater

contaminated by a hazardous substance, pollutant, or contaminant."  N.C. Gen.

Stat. Ann. § 130A-26.3.[8]

The General Assembly expressly made Session Law 2014-44 apply to

actions "filed, arising, or pending" on or after June 20, 2014, the statute's effective

date.  N.C. Sess. L. 2014-44, § 1(c) (amending N.C. Sess. L. 2014-17, § 4).  Under

the law, an action is pending "if there has been no final disposition with prejudice

and mandate issued against that plaintiff issued by the highest court of competent

jurisdiction where the claim was timely filed or appealed as to all the plaintiff's

claims for relief to which this act otherwise applies."  Id.  In this case, the United

States Supreme Court is the highest court of competent jurisdiction, and it has not

issued a final disposition with prejudice, nor has a mandate issued from that Court.

As such, the amended statute of repose would appear to apply to the instant appeal.

---

[8] "For purposes of this section, 'contaminated by a hazardous substance, pollutant, or contaminant' means the concentration of the hazardous substance, pollutant, or contaminant exceeds a groundwater quality standard set forth in 15A NCAC 2L .0202."  N.C. Gen. Stat. Ann. § 130A-26.3 (West 2014).

The Government disagrees.  It contends that the North Carolina General Assembly is without authority to revive the plaintiffs' claims after the repose period has passed.  Under North Carolina law, a statute may be applied retroactively "only insofar as it does not impinge upon a right which is otherwise secured, established, and immune from further legal metamorphosis."  Gardner v. Gardner, 300 N.C. 715, 719, 268 S.E.2d 468, 471 (1980).

The Government directs us to McCrater v. Stone & Webster Engineering Corp., 248 N.C. 707, 104 S.E.2d 858 (1958), in which the North Carolina Supreme Court considered whether a statute extending the time limitation to file a workmen's compensation claim from one year to two years could be applied retroactively to claims filed more than one year but less than two years from the date of the accident.  In other words, if the amendment applied retroactively, the claim would be timely; if not, the claim would be untimely.  According to the North Carolina Supreme Court, the time limit to file a workmen's compensation claim was a condition precedent rather than a procedural statute of limitations.  Id. at 708, 104 S.E.2d at 860.  The court then held that the statute could not apply retroactively because the limitation period was "a part of the plaintiff's substantive right of recovery, [and] could not be enlarged by subsequent statute."  Id. at 709–10, 104 S.E.2d at 860.  The reason, the court explained, was that any attempt to

8

revive an expired claim "would . . . deprive the defendants of vested rights." Id. at 710, 104 S.E.2d at 860.[9]

Like the time limitation in McCrater, North Carolina's statute of repose is a substantive limit on a plaintiff's right to file an action. See Boudreau v. Baughman, 322 N.C. 331, 340, 368 S.E.2d 849, 857 (1988) ("Ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover. The statute of repose, on the other hand, acts as a condition precedent to the action itself." (citations omitted)). As a result, the repose limitation "is an inseparable part of the plaintiff's substantive right of action." McCrater, 248 N.C. at 710, 104 S.E.2d at 861. And like the limitations period in McCrater, the General Assembly may not enlarge the plaintiffs' claim by statute because to do so would be to divest the Government of a vested right.

The plaintiffs argue that McCrater is inapposite because here it was unclear whether the original statute of repose's reference to "personal injury" encompassed claims for diseases. According to the plaintiffs, Session Law 2014-44 merely clarified the scope of the statute of repose. Whether the statute clarified or altered the statute of repose is relevant because under North Carolina law, clarifying

---

[9] The North Carolina Supreme Court has also held that "[a] right or remedy, once barred by a statute of limitations, may not be revived by an Act of the General Assembly," Waldrop v. Hodges, 230 N.C. 370, 373, 53 S.E.2d 263, 265 (1949), because doing so "takes away vested rights of defendants," Wilkes Cnty. v. Forester, 204 N.C. 163, 170, 167 S.E. 691, 695 (1933).

9

amendments apply retroactively, whereas altering amendments do not. See Ray v. N.C. Dep't of Transp., 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012). The Government does not have a vested right in the interpretation of the statute of repose, the plaintiffs contend, because there is no final judgment. And to hold that the Government has a vested right would be inconsistent with the rule that a clarifying amendment "does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment." Id.[10]

_____

[10] To support their claim that the Government does not have a vested right, the plaintiffs cite Bowen v. Mabry, 154 N.C. App. 734, 572 S.E.2d 809 (2002), which considered whether a statutory amendment providing that a pending action for equitable distribution does not abate upon the death of a party could apply retroactively to a claim that was pending when the amendment was enacted. The North Carolina Court of Appeals determined that the amendment was clarifying, and that the defendant did not have a vested right because "[t]here ha[d] been no judgment dismissing Plaintiff's claim prior to the effective date of the Act, and the abatement of an action is not a right 'immune from . . . legal metamorphosis.'" Id. at 737, 572 S.E.2d at 811 (last alteration in original) (quoting Gardner v. Gardner, 300 N.C. 715, 719, 268 S.E.2d 468, 471 (1980)).

The lack of an order dismissing the claim is not dispositive, for in McCarter there had been no dismissal prior to the statutory amendment. Similarly, in Waldrop and Wilkes County, the defendants' rights did not vest because of an order of dismissal; they vested when the limitations period expired. As in all three cases, the statute of repose at issue in this case creates a vested right ten years after the last act or omission giving rise to the cause of action. And while the abatement of an action may not be a right immune from legal metamorphosis, the right not to be sued after the relevant limitations period has passed certainly is, regardless of whether the time limitation is substantive or procedural. See McCrater, 248 N.C. at 709–10, 104 S.E.2d at 860; Waldrop, 230 N.C. at 373, 53 S.E.2d at 265.

At the outset, we disagree that the original statute of repose was ambiguous with respect to a latent-disease exception. See supra at 5. However, we hesitate to dismiss out of hand the plaintiffs' argument that Session Law 2014-44 clarifies, rather than substantively amends, the statute of repose. Session Law 2014-17 is titled "An Act Clarifying that Certain Civil Actions Relating to Groundwater Contamination Are Not Subject to the Ten-Year Statute of Repose Set Forth in G.S. 1-52," and the title of a law provides some evidence of legislative intent. Cf. Smith Chapel Baptist Church v. City of Durham, 350 N.C. 805, 812, 517 S.E.2d 874, 879 (1999) (explaining that even when the text of a statute is plain, "the title of an act should be considered in ascertaining the intent of the legislature").

Moreover, in § 1 of the session law, the General Assembly found that prior to the Supreme Court's decision in Waldburger, "there was ambiguity and uncertainty regarding the effect of federal law on the North Carolina statute of repose in certain environmental cases." N.C. Sess. L. 2014-44, § 1.[11] The legislature also found that "it was the intent of the General Assembly to maximize under federal law the amount of time a claimant had to bring a claim predicated on

---

[11] It is not clear what sort of ambiguity the General Assembly was referring to because the federal law at issue in Waldburger was enacted seven years after North Carolina enacted its statute of repose in 1979. See Superfund Amendments and Reauthorization Act of 1986, Pub. L. 99-499, § 203, 100 Stat. 1613, 1695 (adding 42 U.S.C. § 9658). In other words, at the time the statute of repose was enacted, the federal law at issue in Waldburger would have had no effect on the statute of repose.

11

exposure to a contaminant regulated by federal or State law." Id.  Furthermore, the General Assembly found the Supreme Court's decision in Waldburger to be "inconsistent with the General Assembly's intentions and the General Assembly's understanding of federal law" and that "it never intended the statute of repose in G.S. 1-52(16) to apply to claims for latent disease caused or contributed to by groundwater contamination, or to claims for any latent harm caused or contributed to by groundwater contamination." Id.  Finally, there is the fact that the General Assembly expressly made the statute retroactive.  Although inclusion of an effective date, standing alone, may not prove that an amendment is intended to be clarifying or altering, see Ray, 366 N.C. at 9–10, 727 S.E.2d at 682, the fact that the General Assembly expressly made Session Law 2014-44 retroactive lends further support to the conclusion that the amendment is clarifying and that it applies to the plaintiffs' claims.[12]

---

[12] Beyond the text, the law's legislative history also demonstrates that the General Assembly sought to clarify the scope of the statute of repose.  While the House of Representatives discussed Senate Bill 574, which would ultimately become Session Law 2014-17, one representative exclaimed that "the action we will take . . . is strictly one of clarifying the intent of this body, in regards to how that statute of repose can be interpreted moving forward and how it should have been interpreted since its inception."  N.C. H. Rep. Discussion of S.B. Bill 574, at 4 (June 13, 2014) (statement of Rep. Glazer) (emphasis added).  Summarizing the Supreme Court's decision in Waldburger, that same representative explained it "was never our intent" to limit people exposed to contaminated groundwater to a maximum of ten years to file a claim. Id. at 3.  In the Senate, a senator explained:

> What we're doing today is we're just making sure that we as the General Assembly clarify the text of the statute in order to protect the original intent of the

12

"To determine whether the amendment clarifies the prior law or alters it requires a careful comparison of the original and amended statutes." Ferrell v. Dep't of Transp., 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993). "If the statute initially 'fails expressly to address a particular point' but addresses it after the amendment, 'the amendment is more likely to be clarifying than altering.'" Ray, 366 N.C. at 10, 727 S.E.2d at 682 (quoting Ferrell, 334 N.C. at 659, 435 S.E.2d at 315). However, "it is logical to conclude that an amendment to an unambiguous statute indicates the intent to change the law." Childers v. Parker's, Inc., 274 N.C. 256, 260, 162 S.E.2d 481, 484 (1968).

Comparing the two statutes, it is clear that the amended statute of repose contains a brand new exception for groundwater claims. This is not a case where the General Assembly merely failed to address a particular point—whether groundwater contamination claims fall under the statute of repose—only to address

---

1979 Act's drafters. And what we're dealing with in a couple parts of the state are groundwater contamination claims. And what separates them from the original intent of this – of the bill that was passed in 1979, is that groundwater contamination claims, unlike product liability claims, arise from unknown exposures – well, by unknown elements at unknown times, and so they have latency periods that can be decades long, unlike products. And that the intent of the original bill back in 1979 was to deal with products. They never conceived they would be dealing with groundwater contamination claims. And all we're doing is clarifying that for anyone who might look at our law.

N.C. S. Discussion of S.B. 574, at 3–4 (June 18, 2014) (statement of Sen. Goolsby) (emphasis added).

13

it later.  In <u>Ferrell</u>, the North Carolina Supreme Court held that a statute setting out the manner of determining the price at which the Department of Transportation would sell a parcel of property was clarifying because the original statute directing the Department to sell parcels provided no express guidance as to selling price. <u>Ferrell</u>, 334 N.C. at 659, 435 S.E.2d at 315.  In other words, the clarifying statute filled a hole left by the original statute.  Here, by contrast, the General Assembly created a substantively distinct exception from whole cloth.  That the legislature saw itself as clarifying the scope of the statute of repose is not irrelevant.  But just because the General Assembly said it was clarifying the scope of the statute of repose does not make it so.  "It is this Court's job to determine whether an amendment is clarifying or altering."  <u>Ray</u>, 366 N.C. at 9, 727 S.E.2d at 681.  In this case, the original statute of repose was unambiguous, and it gave no indication that an exception existed for latent diseases.  Thus, it is reasonable to conclude the subsequent amendment was substantive.  See <u>Childers</u>, 274 N.C. at 260, 162 S.E.2d 484.  Session Law 2014-44 did not adopt the plaintiffs' proposed distinction between latent diseases and other types of claims; instead, it created one for groundwater contamination claims generally, and there is no question that this exception is new.

Session Laws 2014-17 and 2014-44 substantively amended the statute of repose to create an exception for groundwater contamination and, as a result, can

14

only apply prospectively, lest they divest the Government of a vested right. See McCrater, 248 N.C. at 709–10, 104 S.E.2d at 860.

\*\*\*

We therefore have the answer to both questions presented in this interlocutory appeal. First, CERCLA, 42 U.S.C. § 9658, does not preempt statutes of repose. See generally CTS Corp. v. Waldburger, ___ U.S. ___, 134 S. Ct. 2175, 189 L. Ed. 2d 62 (2014). Second, North Carolina's statute of repose, N.C. Gen. Stat. § 1-52(16) (2010), applies to the plaintiffs' claims, and it does not contain an exception for latent diseases.[13]

This case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

---

[13] In their supplemental brief to this court, the plaintiffs contend that genuine issues of material fact exist as to whether the Government's last act or omission occurred within ten years. We did not authorize the appeal of that question and thus do not address it.